# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

JEANNIE K. FRAME,

      **Plaintiff,**

  *vs.*

CAROLYN COLVIN,

      **Defendant.**

CAUSE NO.  1:14-cv-234-RLY-DKL

## REPORT AND RECOMMENDATION

Plaintiff Jeannie K. Frame applied for disability benefits and now seeks judicial review of the Commissioner's denial of her applications.  At issue are two applications: the first is for Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act, and the second is for Supplementary Security Income ("SSI"), under Title XVI of the Act.  Her application for DIB was previously reversed and remanded.  While on remand, Mrs. Frame added an application for SSI.  She now appeals the decisions on both applications.   The district judge referred this Cause to this magistrate judge for preparation of a report and recommended disposition pursuant to 28 U.S.C. § 636.  *Entry Referring Matter to Magistrate Judge* [doc. 34].

## Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. '

1

405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner=s factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §

423(d)(1)(A); 20 C.F.R. § 404.1505(a).  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. ' 416.905(a).  A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966.  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process.  42 U.S.C. ' § 423(d)(2)(B) and 1382c(a)(3)(G).  20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further.  At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled.  At the second step, if the applicant's impairments are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404,

Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled.  The Listing of

Impairments are medical conditions defined by criteria that the Social Security

Administration has pre-determined are disabling.  20 C.F.R. ' 404.1525.  If the applicant's

impairments do not satisfy the criteria of a listing, then her residual functional capacity

("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's

ability to do work on a regular and continuing basis despite his impairment-related

physical and mental limitations and is categorized as sedentary, light, medium, or heavy,

together with any additional non-exertional restrictions.  At the fourth step, if the

applicant has the RFC to perform his past relevant work, then he is not disabled.  Fifth,

considering the applicant's age, work experience, and education (which are not

considered at step four), and his RFC, the Commissioner determines if he can perform

any other work that exists in significant numbers in the national economy.  42 U.S.C. '

416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four.

The burden then shifts to the Commissioner at step five to establish that there are jobs

that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995,

1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to

perform the full range of work at her assigned RFC level, then the Medical-Vocational

Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step

five to arrive at a disability determination.  The grids are tables that correlate an

applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level.  Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics.  *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993).  The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist.  If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts.  If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1]  An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision.  If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review.  42 U.S.C. ' 405(g).  If the Appeals Council

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration.  20 C.F.R. Part 404, Subpart Q (' 404.1601, *et seq.*).  Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

declines to review a decision, then the decision of the ALJ becomes the final decision of

the Commissioner for judicial review.

## Background

Ms. Frame alleges that she is disabled as a result of fibromyalgia, depression,

diabetes, asthma, osteoporosis, and degenerative disc disease.   She alleges that she

experiences upper and lower back pain, sharp pains in her arms, and shaking episodes.

She alleges that her shaking episodes disable her from being able to write and that flare-

ups of her fibromyalgia force her to remain in bed most days.   At the time of the hearing,

she had been using a cane for a period of two years.   She is limited to driving a distance

of five miles, once or twice a month.   She also alleges that she is unable to stand for more

than five to ten minutes and is able to walk only one block, which is the equivalent of

fifteen minutes, with the assistance of a cane.

Her past work history consists of working as an assistant dietician in a nursing

home and as a secretary for a window cleaning business.   She worked as a part-time

karaoke singer after her alleged onset date of March 2, 2006, which was classified as

substantial gainful activity by the ALJ.   Ms. Frame was 43 years old at the time of her first

hearing.   The highest grade level she completed in school was the ninth grade.

In December, 2010, the ALJ denied Mrs. Frame's application for DIB.   At step one,

he found that she engaged in substantial gainful activity from February 1, 2007, to June,

2007.   However, he found that there had been a continuous twelve-month period during

which Mrs. Frame did not engage in substantial gainful activity.  At step two, the ALJ found that Mrs. Frame had the severe impairments of fibromyalgia, degenerative disc disease, asthma, and arthritis in the shoulders.  At step three, the ALJ evaluated Mrs. Frame's degenerative disc disease under Listing 1.04 A (disorders of the spine) and her asthma under Listing 3.03 (asthma).  The ALJ found that her impairments did not meet or medically equal the criteria of either Listing.

For the purposes of steps four and five, the ALJ determined Ms. Frame's RFC.  He found that she had the RFC to perform light work with the following additional restrictions:  (1) sit/stand/walk for six of eight hours; (2) lift/carry and push/pull only ten pounds frequently and twenty pounds occasionally; and (3) only occasional bending, stooping, kneeling climbing stairs and ramps, no climbing ropes, ladders, or scaffolds. Although the ALJ found that Mrs. Frame's impairments could "reasonably be expected to cause [her] alleged symptoms," he determined that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  (R. 20.)

At step four, the ALJ found that Mrs. Frame could perform her past relevant  work as a singer and a secretary.  Alternately, he found, at step five, that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform," based on a vocational expert's hearing testimony and Mrs. Frame's age,

education, and RFC.  (*Id.*)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Mrs. Frame's request for review.

Mrs. Frame then filed her first suit for review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g).  In August 2012, the Court reversed the Commissioner and remanded her claim for reconsideration with instructions.  About one and one-half months later, in October 2012, Mrs. Frame filed a new application for DIB benefits and added a claim for SSI benefits.  In January 2013, the Appeals Council found that Mrs. Frame's new DIB claim involved an overlapping period of time with her original DIB claim and, therefore, determined that the new claim was duplicative and consolidated it with her original DIB claim.  Finding that the new SSI claim did not involve an overlapping period of time, the Appeals Council did not consolidate it with the DIB claim.  It assigned both DIB and SSI claims to the original ALJ for reconsideration pursuant to this Court's remand and for a new decision on the SSI claim.

After conducting a new hearing on remand, the ALJ again denied Mrs. Frame's claim for DIB benefits and denied her new claim for SSI benefits.  At step one, the ALJ found that Mrs. Frame engaged in substantial gainful activity during February 2007 through June 2007, earning a reported income of $4,616.00.  (R. 436.)  However, the ALJ also again found that there had been a continuous twelve-month period during which she did not engage in substantial gainful activity.  At step two, the ALJ found that Mrs. Frame had a severe combination of impairments that included:  (1) osteoarthritis with

8

involvement of the pelvis and lower extremities; (2) lumbar and thoracic disc disease; (3) carpal tunnel syndrome; (4) fibromyalgia; (5) bilateral shoulder arthritis; (6) bursitis and tendonitis; (7) osteopenia; (8) restless leg syndrome; (9) obesity; (10) Parkinson's disease; (11) lung disease; (12) disequilibrium; and (13) gastroesophageal reflux disease.  At step three, the ALJ evaluated Mrs. Frame's impairments under the following Listings:  1.02 A, 1.02 B, 1.04, 3.00, 5.00, 11.00, 11.06, and 11.14.  The ALJ found that her impairments did not meet or medically equal any of the criteria.

The ALJ then determined that Mrs. Frame had the RFC to perform a limited range of light work.  The same restrictions that the ALJ assigned in his first decision were assigned in this decision, with the additions that she could not work around unprotected heights and she could not tolerate concentrated exposure to respiratory irritants including fumes and gases.  The ALJ determined that Mrs. Frame's impairments reasonably could be expected to cause the types of symptoms that she alleged but that her statements concerning her symptoms' intensity, persistence and limiting effects were not entirely credible.   At step four, the ALJ determined that Mrs. Frame was capable of performing her past relevant work as an accounts receivable/accounts payable bookkeeper.  Although the ALJ found that Mrs. Frame not disabled at step four, he continued and made a step-five determination as well.  He found that Mrs. Frame was capable of performing other jobs in the national economy based on a vocational expert's

hearing testimony, and her age, education, and RFC.  Thus, the ALJ found Mrs. Frame to be not disabled.

Mrs. Frame now files her second civil action for judicial review of the Commissioner's latest decision on her claims for DIB and SSI benefits.

## Discussion

Mrs. Frame contends that the ALJ's decision contains four errors.  Although the Commissioner filed a response to Mrs. Frame's opening brief — the argument section is only four pages — she failed to adequately develop her arguments and the Court "is not obligated to research and construct legal arguments open to the parties." *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990).  Therefore, the Commissioner's arguments are forfeited. *Aguilar v. Colvin*, No. 1:12-cv-664-SEB-DKL, 2013 WL 4790669, *5 (S.D. Ind., Sept. 5, 2013).

**1. Weight given to Dr. Li's opinion.**  Mrs. Frame argues that the ALJ erred in his evaluation of the opinions of her treating neurologist, Dr. Li.  The ALJ assigned little weight to Dr. Li's opinion that, due to her severe fibromyalgia, Mrs. Frame needs a job that permits her to, *inter alia*, walk for two minutes every thirty minutes, to shift positions (from sitting, standing, and walking) at will, and to take unscheduled breaks.  If accepted, these restrictions apparently render Mrs. Frame disabled.  Mrs. Frame argues several errors in the ALJ's rejection of Dr. Li's opinions.

**a. Absence of severe mental impairments.** The ALJ noted that Dr. Li's opinion is "based in part on the assumption that the claimant has psychological conditions affecting her physical condition, which is to say the claimant has a combination of severe mental impairments," (R. 447), and he found that Mrs. Frame does not have a severe mental impairment or combination of mental impairments, referring to the earlier discussion in his decision. Mrs. Frame argues that the ALJ's logic is circular, discounting a medical opinion because it conflicts with an already reached RFC finding. The Commissioner ignored this argument.

**b. Lack of effect of mental impairments.** In addition to rejecting Dr. Li's opinion that psychological impairments affect Mrs. Frame's physical capabilities because she does not have mental impairment(s) that are severe, the ALJ rejected Dr. Li's opinion because her non-severe mental impairment(s) do not affect her physical condition. (R. 447-48k.) Mrs. Frame argues that the ALJ provided no explanation for this finding and cited no evidence in support. She also argues that the Commissioner's own ruling, S.S.R. 12-2p, recognizes that severe fibromyalgia — which the ALJ found she has — is often intimately connected with symptoms of depression or anxiety disorder, both of which conditions are supported in the record. The Commissioner ignored this argument.

**c. Lack of clinical and opinion support.** The ALJ wrote that Dr. Li's opinion does not have support in his own clinical records and listed six inconsistent findings. (R. 448.) He also wrote that Dr. Li's opinion has little support from any other source in the record

and he cited what he termed inconsistent findings by two other physicians and the opinion of a third physician that there is nothing in the record that support's Dr. Li's opinions.  (*Id.*)  Mrs. Frame argues that the ALJ failed to explain how his cited findings (by Dr. Li and the other two physicians) are inconsistent with Dr. Li's opinions, at least some of the cited findings are not inconsistent with or are irrelevant to Dr. Li's opinions, and the opinion of the third physician was not supported by any explanation or record evidence.  The Commissioner ignored this argument.

**d.  Cherry-picking evidence.**  Mrs. Frame argues that the ALJ "cherry-picked" the evidence by ignoring the findings and evidence that supported Dr. Li's opinions, in contravention of Seventh-Circuit precedent, such as *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011).  She includes specific examples of supporting evidence that the ALJ ignored.  Even if the ALJ did not err in not giving Dr. Li's opinions controlling weight, Mrs. Frame argues that this ignored evidence shows that the ALJ's assignment of little or insignificant weight is not supported by substantial evidence.  The Commissioner ignored this argument.

By ignoring Mrs. Frame's arguments, the Commissioner has forfeited any arguments that she might have against them and in support of the ALJ's decision.  The Court will not construct arguments for the Commissioner.  Consequently, the Court concludes that the ALJ's failure to give controlling weight to, and his assignment of little

weight to, Dr. Li's opinions regarding Mrs. Frame's functional limitations, which render her disabled, are not supported by substantial evidence.

Second, the Commissioner argues that the ALJ rejected Dr. Li's limitations because they were based on Mrs. Frame's subjective complaints and failed to record her pain behavior, citing Bates v. Colvin, 736 F.3d 1093, 1100 (7th Cir. 2013). Bates held an ALJ may discount a treating physician's opinion if it is "based on the claimant's subjective complaint." Id. at 1097. However, the rule in Bates is not applicable to this case. The subjective complaints to which the ALJ referred are complaints of widespread pain due to Mrs. Frame's fibromyalgia. Fibromyalgia as even the Commissioner even points outs is a "diagnosis of exclusion." (Defs. Br. at 17.) Fibromyalgia is a disease in which doctors must make an analysis of the patient's condition based on subjective complaints. Further, the Seventh Circuit prevents an ALJ from discrediting  testimony of pain solely because "there is no objective medical evidence to support it."   Gaylor v. Colvin, No. 1:14-cv-06-WTL-TAB, 2015 U.S. Dist. LEXIS 32261 (7th Cir. March 17,   2015) (citing Myles v. Astrue, 582 F.3d 672, 677 (7th Cir. 2009); 2015 WL 1210184.  Therefore, the Court finds that substantial evidence does not support the ALJ's rejection of Dr. Li's limitations because they were based on Mrs. Frame's subjective complaints.

**2. Weight given to Nurse Harris's opinion.**  Mrs. Frame argues that the ALJ erred when he discounted the opinion of her treating nurse, Ms. Harris.  She argues that, while Ms. Harris's opinion is not a "medical opinion" and, thus, is not entitled to controlling

weight as a treating-source opinion, Ms. Harris's opinions are evidence from a "medical source" and, thus, must be considered in the ALJ's evaluation of the evidence on key issues such as impairment severity and functional limitations.  The ALJ was required to articulate a "reasonable basis for rejecting other medical opinions, which basis is grounded in   substantive evidence in the record."  *Frame v. Astrue*, No. 1:11-cv-1062-WTL-MJD, *Entry on Judicial Review*, 2012 WL 3637583, 2012 U.S. Dist. LEXIS 118704, 26-27 (S.D. Ind., Aug. 21, 2012).

The ALJ discounted Ms. Harris's opinion because he concluded that it "depends primarily on the claimant's assumed fibromyalgia flares," which "are not documented anywhere in the record."  (R. 449.)  Mrs. Frame argues that the administrative record provides ample documentation of Plaintiff's flares and widespread pain related to her fibromyalgia and she cites several items from the records of treating sources Dr. Schmid and Dr. Li that she contends supports the existence and effects of fibromyalgia flare-ups and that she is often frustrated by pain.  (Plaintiff's Brief at 29-30.)

In response, the Commissioner argues only that "the record does not show that Plaintiff's condition varied significantly; rather she had significant complaints whenever she went to the doctor, even for routine follow-up."  In other words, she had flare-ups of only complaints, not fibromyalgia symptoms.   (Defendant's Brief at 18.)   The Commissioner did not address Mrs. Frame's citations to the record.   Because the

Commissioner's curt response is neither factually nor legally developed or supported, it is forfeited.

**3. Weight given to Dr. Fischer's and Dr. Sklaroff's opinions.** Mrs. Frame argues that the ALJ erroneously assigned great weight to the opinions of Drs. Fischer and Sklaroff, the two medical experts.

According to the ALJ, Dr. Fischer, who testified at Mrs. Frame's first hearing, opined that she has a combination of severe impairments, (R. 438), and could perform light work, (R. 438, 446). The ALJ wrote that Dr. Fischer's opinion "has a good foundation, closely corresponds to the objective medical evidence, and is heavily weighted herein." (R. 446.) Mrs. Frame argues that the ALJ's assignment of "great weight" to Dr. Fischer's opinion was erroneous, but the bases for her argument are difficult to discern. She notes that "[d]uring the prior proceedings, this Court felt that Dr. Fischer's opinion did not provide substantial support for the ALJ's RFC determination," but then only conclusorily states that "[i]t still does not," without specifying the reasons why it does not in the context of the remand proceedings. (Plaintiff's Brief, at 30.)

Mrs. Frame also contends that the ALJ "implicitly acknowledged Dr. Fischer's opinion was entitled to little weight because — in his own words — she 'has Parkinson's.' (Tr. 436-437)[.]" (Plaintiff's Brief, at 30.) Apparently, Mrs. Frame's point is that, because the ALJ found that she has Parkinson's disease as a severe impairment, while Dr. Fischer, who did not examine her, found that she did not have Parkinson's disease, the ALJ

15

implicitly found that Dr. Fischer's opinion is entitled to little weight, despite his explicit statements that he assigned it great weight. As noted, the opinions of Dr. Fischer to which the ALJ said that he gave great weight were that she had a severe combination of impairments and she is capable of light work. Mrs. Frame provides no support for her implicit proposition that an ALJ must credit all opinions by a source equally for his weight to be valid. Nonetheless, the Commissioner ignored this argument.

Dr. Sklaroff testified as the medical expert at Mrs. Frame's second hearing. The ALJ found that his opinion "is associated with a good explanation and has the best foundation of any record opinion," (R. 447), and he concluded that "it is the most probative opinion of record pertaining to the claimant's physical status," "outweighs all other opinions of record pertaining to the claimant's physical status," and "is entitled to the most weight." (*Id.*) The ALJ noted some of Dr. Sklaroff's opinions: (1) the medical evidence does not support a diagnosis of fibromyalgia; (2) she does not satisfy a listing; (3) her impairments cause functional limitations; (4) she can walk and stand for only twenty minutes each at a time and for six out of eight hours in a workday; (5) she can sit for six out eight hours in a workday; (6) she can lift and carry up to twenty pounds occasionally and up to ten pounds frequently; (7) nothing in the record supports the use of a cane; (8) regarding Nurse Harris's opinion, nothing in the record supports (a) her opinion, (b) greater restrictions than Dr. Sklaroff found, and (c) the existence of fibromyalgia flares; (9) nothing in the record suppors Dr. Li's opinions. (R. 438-39.)

16

Arguing that the ALJ erroneously assigned superior weight to Dr. Sklaroff's opinion, Mrs. Frame points to three inconsistencies in the ALJ's rationale:  **(1)** Dr. Sklaroff opined that the evidence does not support a diagnosis of fibromyalgia, but the ALJ found that she has the severe impairment of fibromyalgia; **(2)** Dr. Sklaroff opined that the record does not support the use of a cane, but the ALJ found that Mrs. Frame suffers from disequillibrium; **(3)** the ALJ found that Dr. Sklaroff's opinion is consistent with Dr. Fischer's opinion and the objective medical evidence, yet, as noted, the ALJ credited objective medical evidence that is contrary to Dr. Sklaroff's opinion that the record does not support a diagnosis of fibromyalgia or use of a cane.  (Plaintiff's Brief, at 30-31.)

The Commissioner ignored these arguments and, thus, has forfeited any responses she might have had to them.  As indicated above, Mrs. Frame's arguments regarding errors in the ALJ's evaluation of Dr. Fischer's opinions are, on their face, unsupported, unexplained, and apparently faulty.  Therefore, they do not show error in the ALJ's decision despite the Commissioner's forfeiture.  On the other hand, it is not apparent that Mrs. Frame's arguments regarding errors in the ALJ's weighing of Dr. Sklaroff's opinions are unsupported or lack merit.  Therefore, based on their apparent merit and the Commissioner's forfeiture of any defense, the Court finds that Mrs. Frame has shown that the ALJ's assigning superior weight to Dr. Sklaroff's opinion is not supported by substantial evidence.  Because the ALJ did assign such weight to these opinions, the error cannot be deemed to have been harmless.

17

**4. Credibility finding.** Mrs. Frame argues that the ALJ committed three errors in his credibility determination.   First, the ALJ erroneously found that "[t]here is no documentation whatsoever of a fibromyalgia flare," (R. 445), but the record contains "ample documentation of the Plaintiff's ongoing struggle with varying but often severe pain through her entire body — symptoms which are consistent with fibromyalgia," (Plaintiff's Brief, at 31-32.)   Second, the ALJ found that, "[a]lthough the claimant alleges chronic, intense pain, her physical examinations do not show she is debilitated by pain, any other symptom or combination of symptoms or any medical condition," (R. 445), but it is fundamental law that the severity of a claimant's experiences of subjective symptoms and their resulting functional limitations may not be rejected because of a lack of confirmatory objective medical evidence.   Third, in finding Mrs. Frame's allegations of disabling symptoms not credible, the ALJ relied on activities of her daily living that do not, in fact, contradict her allegations because of the critical difference between the demands of a full-time workplace and the flexibility enjoyed in a non-work setting. (Plaintiff's Brief, at 32-22.)

The Commissioner ignored these arguments.   Although she recognized that, because it is particularly difficult to assess functional limitations with the constellation of impairments that Mrs. Frame has, including fibromyalgia, determination of credibility is critical, she failed to defend the ALJ's decision from the errors asserted by Mrs. Frame. Instead, the Commissioner cites three findings made by the ALJ in his first decision, in

2010, before the remand proceedings that do not relate to the arguments that Mrs. Frame makes now.  (Defendant's Brief, at 17-18.)  The Commissioner draws no conclusions from these findings and neither does the Court.  The Commissioner has forfeited any argument in defense.  On their face, Mrs. Frame's arguments have merit and there is no apparent fatal deficiency in them.  Mrs. Frame has shown that the ALJ's credibility determination is not supported by substantial evidence.

**Commissioner's "arguments."**  The Commissioner's included two additional statements in her response.  She stated:

> To a large extent, Dr. Li's limitations were based on Plaintiff's subjective complaints, and Dr. Li did not even record Plaintiff's pain behavior.  *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) ("And where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it.").

> The ALJ recognized that Plaintiff was diagnosed with fibromyalgia, but fibromyalgia is not per se disabling.  [Citations omitted.]  At issue, however, is the degree to which Plaintiff was limited by this and any other impairments she had.

(Defendant's Brief, at 17.)  Regarding the first statement, the Commissioner does not assert that, let alone cite where, the ALJ discounted Dr. Li's opinions because they were based "to a large extent" on Mrs. Frame's subjective complaints.  The Court reviews the ALJ's expressed rationale for his decision, not the Commissioner's attorney's rationale presented on review.  Regarding the second statement, the Commissioner makes no argument and draws no conclusions.  Mrs. Frame did not argue that fibromyalgia is *per se* disabling.  These statements of the Commissioner do not support the ALJ's decision.

19

## Recommendation

The ALJ's denials of Mrs. Frame's applications for DIB and SSI are not supported by substantial evidence.  Because of the failure of the Commissioner to present even a minimal defense of her ALJ's decision and the fact that this is her second attempt to adequately evaluate Mrs. Frame's eligibility for benefits, an additional remand does not promise a better result.  This magistrate judge recommends that the Commissioner's decision be **REVERSED** and that Mrs. Frame's claims be **REMANDED with instruction to pay benefits**.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. ' 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. ' 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger*

*v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:**  08/06/2015

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.